IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**NICK MANDIS, as Administrator
of the Estate of EVELYN MANDIS, Deceased,
and MICHAEL MANDIS,**

    **Plaintiffs,**

**v.**

**THE CITY OF BELLEVILLE,
A Municipal Corporation, and
MATT EISKANT,**

    **Defendant.**                                   **Case No. 05-CV-642-DRH**

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

**I. INTRODUCTION**

This matter comes before the Court on defendants' Motion to Dismiss Second Amended Complaint (Doc. 34), accompanied by defendants' Memorandum in Support of Motion to Dismiss Second Amended Complaint (Doc. 35). The defendants are the City of Belleville ("Belleville") and Matt Eiskant ("Officer Eiskant") (collectively, "Defendants"). Plaintiffs Nick Mandis, as Administrator of the Estate of Evelyn Mandis, and also Michael Mandis filed an opposing Response to the Motion to Dismiss (Doc. 38), to which Defendants filed a Reply (Doc. 40).

Although Defendants make a valiant effort in their argument to negate Officer Eiskant's state of mind, as alleged by Plaintiffs', a Motion that examines the

face of the Complaint is not the proper vehicle for such argument, at least not in Federal court. Accordingly, Defendants' Motion to Dismiss must be denied, as the Court will now explain.

## II. BACKGROUND

Plaintiffs brought this action against Officer Eiskant, a Belleville police officer, in his individual capacity, and against Belleville (Doc. 33, p.1, ¶ 1). Plaintiffs' Second Amended Complaint (Doc. 33) alleges four counts:

**Count I**  In Count I, plaintiff Evelyn Mandis claims damages against Officer Eiskant under **42 U.S.C. § 1983** for violation of her **Fourteenth Amendment** rights and for injuries sustained by the collision (Doc. 33, ¶ 24).

**Count II**  In Count II, plaintiff Nick Mandis, as Administrator of the Estate of Evelyn Mandis, claims damages for the wrongful death of Evelyn Mandis and for other damages against Officer Eiskant under **42 U.S.C. § 1983** and the **Illinois Wrongful Death Statute** (Doc. 33, ¶ 25).

**Count III**  In Count III, plaintiff Michael Mandis claims damages against Officer Eiskant under **42 U.S.C. § 1983** for violation of his **Fourteenth Amendment** rights and for injuries sustained by the collision (Doc. 33, ¶ 27).

**Count IV**  Count IV alleges that Belleville violated Plaintiffs' **Fourteenth Amendment** rights by failing to supervise and train its officers (Doc. 33, ¶¶ 30-32).

On or about September 29, 2003, at approximately 8:04 p.m., Michael Mandis was driving his 1998 Mazda on Illinois Route 157, at or near its intersection with West Main Street, when a vehicle being pursued by Officer Eiskant collided with Michael Mandis's car (Doc. 33, ¶ 4, 8). As a result of the accident, Michael Mandis

was injured and his mother, Evelyn Mandis, who had been riding in the passenger's seat, was killed (Doc. 35, p. 4).

Prior to the collision, Officer Eiskant had been on patrol, traveling eastbound on the 9800 block of West Main Street (Doc. 33, ¶ 9). While on patrol, he observed a silver Oldsmobile pull out of a parking lot at 9618 West Main Street (Doc. 33, ¶ 10). Allegedly, the driver of the Oldsmobile failed to turn on his headlights (Doc. 33, ¶ 11). Officer Eiskant followed the driver for several blocks until the driver switched on his headlights, turned on to South 89th Street, and parked his car (Doc. 33, ¶ 11). South 89th Street is a dead-end street (Doc. 33, ¶ 11). Officer Eiskant continued eastbound on West Main Street (Doc. 33, ¶ 13). At some point, Officer Eiskant turned around, pulled into a vacant lot around the 8900 block of West Main Street and waited for the driver to proceed from South 89th Street (Doc. 33, ¶ 13).

As Officer Eiskant had apparently anticipated, the same Oldsmobile eventually emerged at the intersection of South 89th Street and West Main Street. The driver of the Oldsmobile then proceeded to turn right onto West Main Street, heading eastbound; Officer Eiskant again followed this vehicle for three blocks (Doc. 33, ¶ 13, 14). Officer Eiskant claims he noticed that the trunk lock had been punched (Doc. 33, ¶ 14). Officer Eiskant activated his overhead lights and, in response, the driver of the Oldsmobile made a U-turn, thereby heading westbound on West Main Street (Doc. 33, ¶ 14). Officer Eiskant gave chase – the pursuit allegedly reached speeds in excess of 75 miles per hours (Doc. 33, ¶ 14).

Plaintiffs claim that "the high speed pursuit was initiated by [Officer

Eiskant] after having the luxury of time and reflection before initiating the chase" (Doc. 33, ¶ 15).  Plaintiffs believe that instead of calling for backup when the suspect was parked on South 89th Street, which may have avoided any pursuit, Officer Eiskant, with deliberate indifference, invited and initiated the high-speed car chase by waiting for the driver to turn onto West Main Street (Doc. 33, ¶ 16, 17).

Plaintiffs state that "[Lieutenant] Stumph was working the front desk at headquarters and instructed Patrolman Eiskant to terminate his pursuit but the accident occurred before the pursuit was terminated" (Doc. 33, ¶ 18).  Plaintiffs also allege "Patrolman Eiskant knew that the vehicle was about to leave the city limits of Belleville, knew the vehicle was approaching a heavily traveled intersection, and yet continued his high speed chase . . . essentially running the vehicle through a red light where it collided with the vehicle operated and/or occupied by plaintiff" (Doc. 33, ¶ 19).  Plaintiffs claim Officer Eiskant's actions were not justified and, as a result, violated Plaintiffs' constitutional rights.  Ultimately, Plaintiffs argue that Officer Eiskant's actions demonstrate that he acted with deliberate indifference that shocks the conscience (Doc. 33, ¶ 2) or, in the alternative, an intent to cause harm (Doc 33. ¶ 3).

### III. ANALYSIS

**A.     LEGAL STANDARD**

Defendants have filed their Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 34), pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**, for failure to state a claim. When considering a motion to dismiss pursuant to **Rule 12(b)(6)**, the Court must determine whether the Plaintiffs' Second Amended Complaint states a claim upon which relief can be granted. ***See* FED. R. CIV. P. 12(b)(6)**. As part of its scrutiny, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of Plaintiffs. ***See Szumny v. Am. Gen. Fin.*, 246 F.3d 1065, 1067 (7th Cir. 2001)(applying this standard to a Rule 12(b)(6) motion)**. The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. ***Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996)**. A court will grant a motion to dismiss only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations. ***Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000)**.

In federal court, it is very difficult for a moving party to prevail on a **Rule 12(b)(6)** motion. When filing a **Rule 12(b)(6)** motion in federal court, a party should be mindful of the fact that "[f]ederal complaints plead *claims* rather than facts." ***Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 713 (7th Cir. 2006)**. **FEDERAL RULE OF CIVIL PROCEDURE 8(a)** only requires a claim contain "a short and

plain statement" stating the jurisdictional basis for bringing the claim in federal court, that the pleader is entitled to relief, and a demand for judgment for the relief sought. As the Seventh Circuit has recently reiterated, "[i]t is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate." ***Id.* (citing *Swierkiewica v. Sorema N.A.*, 534 U.S. 506 (2002); *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427-28 (7th Cir. 2005); *Barholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1077-78 (7th Cir. 1992))**. Therefore, the requirement that a plaintiff state a *prima facie* case within the complaint is, for the most part, obviated in federal court.

The factual details the moving party usually seeks in a **Rule 12(b)(6)** motion should typically surface after the parties have engaged in the pre-trial discovery process, unless the district court should order the plaintiff to file a more definite statement, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(e)**. *Id.* Pleading specific facts is only required in federal court when the claim falls within the narrow scope of **FEDERAL RULE OF CIVIL PROCEDURE 9(b)** (claims regarding fraud or mistake). *Id.* **at 715**. Accordingly, when considering a **Rule 12(b)(6)** motion, the Court must remember that the movant's "[a]rguments that rest on negative implications from silence are poorly disguised demands for fact pleading." *Id.*

**B.    DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendants move to dismiss all four counts of Plaintiffs' Second Amended Complaint. As stated above, the gravamen of the Second Amended Complaint seek damages pursuant to 42 U.S.C. § 1983 for an alleged deprivation of Plaintiffs' Fourteenth Amendment substantive due process right to life as a result of their injuries suffered due to the high-speed car chase.

   **1.    Officer Eiskant**

The Due Process Clause of the Fourteenth Amendment to the Constitution offers "'protection of the individual against arbitrary action of government.'" ***County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)(quoting *Wolff v. McDonnell*, 418 U.S. 539, 558(1974))**. Typically, an individual's Fourteenth Amendment due process rights are violated only if a government official's actions display a deliberate indifference to life or liberty that "shocks the conscience." ***Id.* at 847**. Defendants assert that in the context of a high-speed car chase, ***Lewis*** demands a higher burden of proof in order to impose liability than just a showing of deliberate indifference (Doc. 35, p. 6, 8). Much like in the context of a prison riot, the Supreme Court found that a police officer must often react in haste, without the benefit of deliberating on whether the need to give chase to stop a suspect in flight outweighs "the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders." ***Id.* at 853**. Given that the "deliberate indifference" standard would imply the officer

actually had time to deliberate, the Supreme Court held that liability in the context of a high-speed car chase could only be found upon a showing that the police officer acted with "intent to harm." *Id*. at 854; *see also Bublitz v. Cottey*, 327 F.3d 485, 491 (7th Cir. 2003)(finding *Lewis* required a showing "substantial culpability" in that "generally only *deliberate* action intended to harm another is the type of conduct targeted by the Fourteenth Amendment")(emphasis in original).

Defendant argues that Plaintiffs' § 1983 claims against Officer Eiskant fail to plead a proper cause of action because Plaintiffs "since it cannot reasonably be inferred from the allegations that Officer Eiskant intended to cause harm to [P]laintiffs" (Doc. 35, p. 6)(emphasis in original). Defendants continue to expound their argument, explaining how the actions of Officer Eiskant were, at most, "the result of [his] bad judgment or recklessness," and thus, Plaintiffs merely state conclusory allegations that Officer Eiskant acted with "intent to harm." (*Id*. at 9)

In their Second Amended Complaint, Plaintiffs allege Officer Eiskant acted with "deliberate indifference that shocks the conscience," but also plead, in the alternative, that he "intended to cause harm by intentionally engaging in a high speed pursuit . . ." (Doc. 33, ¶¶ 2&3). While Defendants argue that Plaintiffs have not pled sufficient facts to support their allegation of "intent to harm," at this stage of the litigation, it is not required. Although Defendants claim Plaintiffs' allegation of "intent to harm" is conclusory (Doc. 35, p. 8), under the federal notice-based pleading standards, as well as the Seventh Circuit's holding in *Kolupa*, Plaintiffs

have adequately apprised Defendants of the nature of their claims. Further, though a plaintiff may plead himself out of court by alleging facts that undermine the claim, *see Lekas v. Briley*, **405 F.3d 602, 614 (7th Cir. 2005)**, that is not the case here. The Court cannot conclude that Plaintiffs' have pled facts which affirmatively negate the allegation that Officer Eiskant acted with "intent to harm." Therefore, Plaintiffs' § 1983 claims against Officer Eiskant (Counts I - III) survive Defendants' Motion to Dismiss.

### 2. The City of Belleville, Illinois

In order to show the City is liable for a § 1983 violation of Plaintiffs' individual civil rights, Plaintiffs must demonstrate either:

(1) the City had an express policy that, when enforced, causes a constitutional deprivation;

(2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or

(3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. The City of Chicago*, **230 F.3d 319, 324 (7th Cir. 2000)**(citing *McTigue*, **60 F.3d at 382**).

Further, the United States Supreme Court found that a municipality cannot be held liable under § 1983 merely "under the 'failure to train' theory." *City of Canton, Ohio v. Harris*, **489 U.S. 378, 388 (1989)**. Instead, the City's failure to train its law enforcement personnel must "[amount] to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* Therefore,

Plaintiff must show that the City "consciously" or "deliberately" made a choice not to provide proper training. ***Id.***

Defendants argue that because Plaintiffs fails to properly state a claim against Officer Eiskant, their claims against Belleville must also fail. ***See, e.g., Estate of James Phillips, III v. City of Milwaukee*, 123 F.3d 586 (7th cir. 1997)("[The City . . . can [not] be held liable on a failure to train theory or on a municipal policy theory absent a finding that the individual police officers are liable on the underlying substantive claim.")** However, Defendants assume the underlying substantive claims against Officer Eiskant fail. As demonstrated by the Court's analysis regarding Plaintiffs' claims against Officer Eiskant discussed previously, at this stage of the proceedings, Defendants have made an incorrect assumption. Additionally, Plaintiffs have sufficiently pled the elements necessary to bring these claims against Belleville. Thus, Plaintiffs' claims against Belleville will not be dismissed upon Defendants' instant Motion.

### 3. **Qualified Immunity**

Lastly, Defendants assert that even if Plaintiffs have sufficiently pled claims against Officer Eiskant, these claims are subject to dismissal under the doctrine of qualified immunity (Doc. 34, ¶ 3; Doc. 35, p. 10). Typically, the doctrine of qualified immunity acts as a protective shield for "government officials against suits arising out of their exercise of discretionary functions 'so long as their actions could reasonably have been thought consistent with the rights they are alleged to

have violated.'" ***Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir. 2005)(quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987))**.  However, officers "who act unreasonably or 'who knowingly violate the law'" are not entitled to use qualified immunity as a defense.  ***Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1014 (7th Cir. 2006)(quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991))**.  Immunity questions should be resolved at the earliest possible stage of litigation, the threshold inquiry being whether the facts of the case, when viewed in the light most favorable to the Plaintiff, show that the Officer'sdd conduct violated Plaintiff's constitutional rights.  ***Saucier v. Katz*, 533 U.S. 194, 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991))**.  The next step of the inquiry is to ask whether Plaintiff's constitutional rights were clearly established at the time.  ***Id.***

When considered solely from the allegations in Plaintiffs' Second Amended Complaint, as is the proper scope of analysis for a **Rule 12(b)(6)** Motion, the Court cannot conclude that the doctrine of qualified immunity shields Officer Eiskant from liability.  Plaintiffs have alleged Officer Eiskant acted with "intent to harm," by engaging in the high-speed car chase.  Clearly, any reasonably person would be fully aware that this decision could lead to dire consequences for either himself, the fleeing driver or innocent bystanders, such as Plaintiffs.  Therefore, as long as there remains the possibility that Plaintiffs may prevail on their claims against Officer Eiskant, qualified immunity will not serve him.

## IV. CONCLUSION

For the reasons as set forth in this Order, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 34) is hereby **DENIED**. Additionally, pursuant to the Court's January 23, 2006 Order (Doc. 26), staying discovery in this matter pending the ruling on the Motion to Dismiss (Doc. 34), said stay is hereby lifted. Magistrate Judge Frazier shall handle all further matters pertaining to discovery.

**IT IS SO ORDERED.**

Signed this 4th day of December, 2006.

/s/       David RHerndon
**United States District Judge**