IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**NICK MANDIS, as Administrator of the
Estate of EVELYN MANDIS, Deceased, and
MICHAEL MANDIS,**

    Plaintiffs,

v.

**THE CITY OF BELLEVILLE, A Municipal
Corporation, and MATT EISKANT,**

    Defendants.                                   Case No. 05-cv-642-DRH

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. INTRODUCTION

This matter comes before this Court on Defendants' Motion for Summary Judgment (Doc. 50), accompanied by their supporting memorandum (Doc. 50). The Defendants are the City of Belleville ("Belleville") and Matt Eiskant ("Officer Eiskant") (collectively, "Defendants"). Plaintiffs Nick Mandis, as Administrator of the Estate of Evelyn Mandis, and Michael Mandis have filed their opposing Response (Doc. 51), to which Defendants have filed a Reply (Doc. 55). Plaintiffs, the third-party victims of a high-speed automobile chase, have brought this **§ 1983** action alleging that Defendants violated their Fourteenth Amendment right to be free from the deprivation of life, liberty or property without due process of the

law. Though the Court sympathizes with Plaintiffs, for the reasons discussed herein, the law does not provide a means to impose liability upon Defendants in this case.

## II. BACKGROUND[1]

Plaintiffs filed this suit against Officer Eiskant, a Belleville police officer, in his individual capacity, and against the City of Belleville, Illinois (Doc. 33, p. 1, ¶ 1). Plaintiffs' Second Amended Complaint (Doc. 33) alleges the following four Counts:

**Count I**  In Count I, Plaintiff Evelyn Mandis claims damages against Officer Eiskant under **42 U.S.C. § 1983** for violation of her **Fourteenth Amendment** rights and for injuries sustained by the collision (Doc. 33, ¶ 24).

**Count II**  In Count II, Plaintiff Nick Mandis, as Administrator of the Estate of Evelyn Mandis, claims damages for the wrongful death of Evelyn Mandis and for other damages against Officer Eiskant under **42 U.S.C. § 1983** and the **Illinois Wrongful Death Statute** (Doc. 33, ¶ 25).

**Count III**  In Count III, Plaintiff Michael Mandis claims damages against Officer Eiskant under **42 U.S.C. § 1983** for violation of his **Fourteenth Amendment** rights and for injuries sustained by the collision (Doc. 33, ¶ 27).

**Count IV**  Count IV alleges that Belleville violated Plaintiffs' **Fourteenth Amendment** rights by failing to supervise and train its officers (Doc. 33, ¶¶ 30-32).

On or about September 29, 2003, at approximately 8:04 p.m., Michael Mandis was driving his 1998 Mazda on Illinois Route 157, at or near its intersection with West Main Street, when a vehicle being pursued by Officer Eiskant collided with

---

[1] This factual background is essentially duplicative of the factual background found in the Court's December 4, 2006 Order denying Defendants' Motion to Dismiss (Doc. 41).

Michael Mandis' vehicle (Doc. 33, ¶ 4, 8). As a result of the collision, Michael Mandis was injured and his mother, Evelyn Mandis, who had been riding in the passenger's seat, was killed (Doc. 50, pp. 4-5).

Prior to the collision, Officer Eiskant had been on patrol, traveling eastbound on the 9800 block of West Main Street (Doc. 33, ¶ 9). While on patrol, he observed a silver Oldsmobile pull out of a parking lot at 9618 West Main Street (Doc. 33, ¶ 10). Allegedly, the driver of the Oldsmobile failed to turn on his headlights (Doc. 33, ¶ 11). Officer Eiskant followed the driver for several blocks until the driver switched on his headlights, turned onto South 89th Street and parked his car (Doc. 33, ¶ 11). South 89th Street is a dead-end street (Doc. 33, ¶ 11). Officer Eiskant continued eastbound on West Main Street (Doc. 33, ¶ 13). At some point, allegedly after learning from Dispatch that the Oldsmobile's license plate was expired and was instead reported registered to a 1986 Ford (Doc. 50, p. 2), Officer Eiskant turned around, pulled into a vacant lot around the 8900 block of West Main Street and waited for the Oldsmobile to emerge from South 89th Street (Doc. 33, ¶ 13).

As Officer Eiskant had apparently anticipated, the same Oldsmobile eventually appeared at the intersection of South 89th Street and West Main Street. The driver of the Oldsmobile then proceeded to turn right onto West Main Street, heading eastbound; Officer Eiskant again followed the vehicle for three blocks (Doc. 33, ¶ 13, 14). Officer Eiskant activated his overhead lights and, in response, the driver of the Oldsmobile made a U-turn, thereby heading westbound on West Main Street (Doc. 33, ¶ 14). Officer Eiskant gave chase; the pursuit allegedly reaching

speeds of approximately 75 miles per hour (Doc. 33, ¶ 14).

Plaintiffs claim that "the high speed pursuit was initiated by [Officer Eiskant] after having the luxury of time and reflection before initiating the chase" (Doc. 33, ¶ 15). Plaintiffs believe that instead of calling for backup when the suspect was parked on South 89th Street, which may have avoided any pursuit, Officer Eiskant, with deliberate indifference, invited and initiated the high-speed car chase by waiting for the driver to turn onto West Main Street (Doc. 33, ¶ 16, 17). Plaintiffs allege "Patrolman Eiskant knew that the vehicle was about to leave the city limits of Belleville, knew the vehicle was approaching a heavily traveled intersection, and yet continued his high speed chase . . . essentially running the vehicle through a red light where it collided with the vehicle operated and/or occupied by plaintiff" (Doc. 33, ¶ 19). Plaintiffs claim Officer Eiskant's actions were not justified and, as a result, violated Plaintiffs' constitutional rights (Doc. 33).

### III. DISCUSSION

**A.     Legal Standard**

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** ***Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))**. The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. ***Santaella***

*v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). In reviewing a summary judgment motion, this Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). "[Nonmovant's] own uncorroborated testimony is insufficient to defeat a motion for summary judgment." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939

**(7th Cir. 1997)**. Further, the non-moving party's own subjective belief does not create a genuine issue of material fact. ***Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997)**.

**B. Analysis**

Defendants move for summary judgment on all four counts of Plaintiffs' Second Amended Complaint, in which they seek damages pursuant to **42 U.S.C. § 1983** for an alleged deprivation of their Fourteenth Amendment right to be free from the deprivation of life, liberty or property without due process of the law, as a result of injuries suffered due to the high-speed chase.

**1. Counts I, II and III (Officer Eiskant)**

To state a claim under **42 U.S.C. § 1983**, Plaintiffs must present facts sufficient to show that Defendants, acting under color of state law, deprived Plaintiffs of a specific right or interest secured by the Constitution or laws of the United States. ***Bublitz v. Cottey*, 327 F.3d 485, 491 (7th Cir. 2003)**. The Due Process Clause of the Fourteenth Amendment offers "'protection of the individual against arbitrary action of the government.'" ***City of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citing *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974))**. When a plaintiff alleges a constitutional due process violation, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." ***Id.* at 847**. For this reason, mere negligence will not give rise to a due process violation as "the Fourteenth Amendment

is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States . . . .'" **Id. at 848 (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976))**. Therefore, "[i]t is generally only *deliberate* action intended to harm another that is the type of conduct targeted by the Fourteenth Amendment: '[C]onduct *intended* to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.'" ***Bublitz*, 327 F.3d at 491 (citing *Lewis*, 523 U.S. at 849) (emphasis and alteration in original)**.

The Supreme Court has recognized a "deliberate indifference" standard for determining whether certain conduct rises to the level of a Fourteenth Amendment violation. **See id. at 490 (citing *Lewis*, 523 U.S. at 850-54; *Estelle v. Gamble*, 429 U.S. 97 (1976))**. The Seventh Circuit has noted that the Supreme Court in ***Lewis***, appeared to draw a distinction between three separate levels of fault: "negligence (which falls below the threshold required for a constitutional deprivation), deliberate indifference, and conscience-shocking." **Id. (citing *Payne v. Churchich*, 161 F.3d 1030, 1040 (7th Cir. 1998))**. However, courts have "cautioned against reading those classifications too rigidly, noting that [d]eliberate indifference, in fact, is merely the manifestation in certain situations of a more general inquiry, which is whether the government conduct at issue shocks the conscience." **Id. (citing *Schaefer v. Goch*, 153 F.3d 793, 797 (7th Cir. 1998) (internal quotations omitted))**. Thus, to rise to the level of a constitutional

deprivation under the Fourteenth Amendment, deliberately indifferent conduct "must be one which is conscience-shocking – the Supreme Court has acknowledged that not every deliberately indifferent action will rise to the 'constitutionally shocking level.'" *Id*.

However, the "deliberate indifference" standard can only apply when actual deliberation by the defendant was possible. **Lewis, 523 U.S. at 851 (citing Whitley v. Albers, 475 U.S. 312, 320 (1986))**. This situation often occurs "in the custodial situation of a prison" where "forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare." *Id.* When circumstances are "markedly different," and do not allow the governmental official any "forethought" – such as in the case of a prison riot or a high-speed car chase – the official must often react with "split-second" haste. *Id.* In the context of a high-speed car chase, the police officer is essentially deprived of the benefit of deliberating on whether attempting to apprehend a fleeing suspect outweighs "the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders." *Id.* **at 853**. Even when the circumstances evince reckless behavior on the part of the pursuing police officer, due to the fact that a high-speed car chase generally involves "unforeseen circumstances demand[ing] an officer's instant judgment," it will not constitute conscience-shocking behavior. *Id.* Accordingly, the Supreme Court, in **Lewis**, held that to give rise to liability under the Fourteenth Amendment,

redressible by a **§ 1983** suit, a plaintiff must show that the defendant participated in the high-speed car chase with an intent or purpose to cause harm. *Id.*; *see also* ***Bublitz*, 327 F.3d at 491**.

The crux of the parties' argument in this case turns on whether the Court finds that Officer Eiskant had ample time to deliberate before choosing to engage in a high-speed car chase or whether it finds that the situation instead demanded his instant judgment. Defendants believe the facts show Officer Eiskant needed to make a split-second decision about whether to pursue the fleeing Oldsmobile. Further, Defendants assert that the facts do not show that Officer Eiskant acted with "intent to harm," and thus, his behavior did not shock the conscience. Conversely, Plaintiffs argue the facts prove that Officer Eiskant actually did have time to deliberate about whether he should engage in a high-speed car chase. In other words, Plaintiffs assert that Officer Eiskant possessed enough information to know that the driver of the Oldsmobile was a possible felon and therefore he should have attempted to pull over the vehicle much earlier than he did. For this reason, Plaintiffs advocate that the Court find Officer Eiskant acted with deliberate indifference in failing to stop the Oldsmobile while it was parked on South 89th Street, thereby creating a situation that permitted the suspect to flee.

From reviewing the parties' briefs and the deposition testimony of Officer Eiskant (submitted as an exhibit to Defendants' Motion for Summary Judgment), it does not appear that the Officer believed he possessed valid

information to warrant pulling over the Oldsmobile when he observed it parked on South 89th Street (Doc. 50: Eiskant depo., 30:12-18). It was not until Officer Eiskant had driven past South 89th Street that he received information from dispatch that the Oldsmobile's license plate did not match its registration and was expired (*Id*. at 32:16 - 33:1). Officer Eiskant then turned around to head back to South 89th Street, intending to pull over the Oldsmobile for a registration violation, however, it was not parked there any longer (*Id*. at 33:2 - 34:15). He then testified that because South 89th Street was a dead end street but had streets that branched off of it, he parked his police vehicle in a vacant lot on the 8900 block of West Main Street, believing it to be the most tactical approach he could take, as he suspected the Oldsmobile would come back up South 89th Street to turn onto West Main Street; (*Id*. at 35:23 - 36:18; 42:23 - 44:24). Once the Oldsmobile emerged from South 89th Street onto West Main Street, Officer Eiskant drove up behind the vehicle to pull it over. Prior to activating his emergency lights in order to signal for the Oldsmobile to pull over, Officer Eiskant testified that he had to follow proper procedure by calling dispatch to advise them of the intended vehicle stop and report certain information (*Id*. at 52:10 - 52:20). The Oldsmobile actually pulled over and came to a complete stop for several seconds before making a U-turn, heading the opposite direction on West Main Street (*Id*. at 58:8-24). Officer Eiskant testified that he also did a U-turn, activated the patrol car's siren and followed the fleeing Oldsmobile, which then began the high-speed car chase ultimately resulting in the death of Evelyn Mandis and the injuries suffered by Michael Mandis.

The Seventh Circuit case ***Steen v. Myers*, 486 F.3d 1017 (7th Cir. 2007)**, closely parallels the facts of this case. ***Steen*** involved a high-speed chase of a motorcycle. Ultimately, the fleeing motorcycle crashed, killing the operator and rendering the passenger disabled. ***Id.* at 1019**. The defendant Police Officer in ***Steen*** observed the motorcycle and its riders when it was parked on Main Street.[2] The Officer suspected that the operator of the motorcycle was driving on a suspended license and did not possess a valid motorcycle endorsement.[3] ***Id.*** Therefore, the Officer drove past the motorcycle (which was then parked in a new location), parked his patrol car and ran a check on the status of the suspect's license. ***Id.*** The Officer made sure that he parked his patrol car in a location that was not visible to the motorcycle driver, but where the Officer would still be able to notice the motorcycle if it drove back out onto Main Street. ***Id***.

During the wait, dispatch confirmed the Officer's suspicion that the motorcycle driver was driving on a suspended license with no motorcycle endorsement. ***Id***. When the motorcycle did not return to the Main Street location, the Officer drove back to the location where it was last parked. He saw the driver and passenger riding the motorcycle down the street; the driver of the motorcycle saw the patrol car and immediately sped away down a side street. ***Id.*** Activating his

---

[2] Plaintiffs actually sued two Police Officers, the one who initiated the pursuit and another who followed behind him in a separate patrol car. For purposes of this Order, the Court will only refer to the one defendant Officer who initiated the high-speed chase.

[3] This suspicion apparently stemmed from the Officers' previous encounter with the motorcycle driver, a few months before the incident.

patrol car lights and siren, the Officer pursued the motorcycle, but the driver would not pull over. *Id.* The pursuit continued, reaching speeds between up to approximately 100 and 130 miles per hour and lasted approximately six minutes before the motorcycle lost control and left the road, killing the driver and injuring the passenger. *Id.* **at 1019-20**.

The *Steen* plaintiffs, representing the interests of the motorcycle driver and passenger, filed claims under the Fourth and Fourteenth Amendments, alleging that the Officer engaged in a "cat-and-mouse" game, stalking the motorcycle. *Id.* **at 1022-23**. Further, the plaintiffs asserted that the Officer could have prevented the chase and the ensuing accident if he had stopped the motorcycle while it was still parked instead of first waiting for confirmation from dispatch that the motorcycle driver's license was suspended. Instead, the plaintiffs believed the Officer "was lying in wait to initiate the traffic stop at a place that would maximize embarrassment" for the driver. *Id.* **at 1023**. They also took issue with the Officer's decision to pursue a high-speed chase once the motorcycle fled, as the identity of the driver was already known; the chase could have been terminated early on and the driver later tracked down. *Id.* During the chase, the plaintiffs also believed the Officer followed the motorcycle too closely and that the six-minute duration of the chase gave him ample time to weigh the risks to determine that it was unsafe to continue the pursuit. *Id.* For these reasons, the *Steen* plaintiffs believe the Officer's behavior shocked the conscience and his actions were taken with intent to harm. *Id.*

Although the Officer opposed such a characterization, the **Steen** court viewed the facts in the light most favorable to the plaintiffs, as non-movants.[4] Ultimately, the Seventh Circuit agreed with the district court that there was no constitutional violation. *Id.* First, it found that pursuit of a suspect who unexpectedly flees a traffic stop is a "legitimate government interest." *Id.* The circumstances of how the high-speed chase evolved, at most, questioned the wisdom of the Officer's actions but not whether his actions amounted to a constitutional violation. *Id.*

The Seventh Circuit found no evidence of the Officer's intent to harm the plaintiffs, even considering the high speeds reached. ***Id.* at 1024 (comparing facts with *Lewis*, 523 U.S. 836-37, finding that the Officer made it clear from the beginning of his intention to pull over the motorcycle by using his patrol car lights and siren)**. Thus, there was no conscience-shocking behavior. *Id.* Although the circumstances may prove that the Officer's actions were "negligent, reckless, or even deliberately indifferent to the safety of [the plaintiffs]," such is the realm of tort law; the Officer's behavior did not rise to the level of a Fourteenth Amendment violation. ***Id.* at 1025 (recognizing that "[t]he Supreme Court has set the bar awfully high in pursuing a Fourteenth Amendment claim that arises out of a police chase" as a defendant must exhibit "conscience-shocking behavior and

---

[4] The Seventh Circuit reviewed the district court's grant of summary judgment in favor of the defendants on the constitutional claims. ***Id.* at 1019**.

**an intent to cause harm unrelated to a legitimate government interest")**.[5]

In the instant case, construing the facts in the light most favorable to Plaintiffs, there is no evidence that Officer Eiskant's actions were conscience-shocking. When he attempted to pull over the Oldsmobile and it made a U-turn to flee, pursuing the fleeing vehicle was a legitimate government interest. Further, as case law illustrates, a Police Officer's decision to pursue a fleeing vehicle is not *per se* conscience-shocking behavior. **See Steen, 486 F.3d at 1023**. Given the absence of forethought allowed by a high-speed car case, it is only when the Officer's actions

---

[5]

Similarly, the First District Appellate Court of Illinois, in **Shuttlesworth v. City of Chicago, 879 N.E.2d 969 (Ill. App. Ct. 2007)**, found the defendant Police Officers' actions in a high-speed car chase did not amount to "willful and wanton conduct." *Id.* **at 976**. In **Shuttlesworth**, the Officers began to follow a Monte Carlo after they observed that the driver was not wearing his seatbelt. *Id.* **at 971**. They also discovered, from their patrol car computer, that the Monte Carlo's license plate was actually registered to a Chevy Malibu. *Id.* At this point, the Officers decided a vehicle stop was necessary, so they activated the patrol car's lights and used a hand-held spotlight to signal the driver to pull over. *Id.* The Monte Carlo pulled over on the side of the road, but when one of the Officers approached the vehicle, the driver accelerated towards him in reverse, then placed the car into drive and fled. *Id.* Fortunately, the Officer managed to jump out of the way to avoid being hit. *Id.*

The Officers pursued the fleeing Monte Carlo on a residential roadway where the posted speed limit was 25 miles per hour: the patrol car reached speeds of approximately 40 to 50 miles per hour and the Monte Carlo, while weaving side to side between the westbound and eastbound lanes, reached speeds of up to 80 miles per hour. *Id.* The Officers terminated their pursuit once it appeared the Monte Carlo was too far ahead to give further chase. *Id.* **at 972**. A few seconds later, the driver of the Monte Carlo swerved into an oncoming lane, colliding with an automobile driven by the plaintiffs. *Id.* The plaintiffs brought suit against the Officers and the City for injuries suffered as a result of the collision due to the high-speed car chase.

Although **Shuttlesworth** is not based upon a theory of Fourteenth Amendment liability, the plaintiffs' claimed a violation of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (the "Act"), which requires a finding that the Officers' actions amounted to willful and wanton conduct. *Id.* **at 973 (citing 745 ILL. COMP. STAT. 10/2-202)**. The Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." **745 ILL. COMP. STAT. 10/2-210**. The Illinois Appellate Court found no evidence, even construing the facts in a light most favorable to plaintiffs, that the Officers' conduct was willful and wanton. Instead, it found that the act of initiating pursuit of a fleeing vehicle, even at high speeds, did not establish that "the [O]fficers acted with an actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others." *Id.* **at 976 (citations omitted)**.

are coupled with an intent to harm that liability will arise under the Fourteenth Amendment. *Lewis*, **523 U.S. at 854**.

Here, the Court finds no question of material fact regarding whether Officer Eiskant acted with intent to harm – he did not. The facts show that he activated his patrol car's lights and siren once he began the pursuit, that there was relatively little other traffic out on the road, and the roads were lighted and dry. Lastly, Officer Eiskant explained, during his deposition, that he did not immediately terminate the pursuit once the cars reached speeds higher than the posted speed limit because he judged that the danger to the public, at the time, did not outweigh the necessity to apprehend the driver of the Oldsmobile. High speeds alone cannot suffice to create liability in this matter. In sum, Plaintiffs have not met the "awfully high bar" set by the Supreme Court to find liability under the Fourteenth Amendment for high-speed car chases. *See Steen*, **486 F.3d at 1025**.

Plaintiffs, however, offer the application of a lesser standard of deliberate indifference, operating under the presumption that Officer Eiskant had time to deliberate his course of action prior to the high-speed chase. When actual deliberation or forethought is possible, liability will be imposed when the defendant official "knows of and disregards an excessive risk to [one's] health or safety[;] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer v. Brennan*, **511 U.S. 825, 837 (1994) (discussing liability on claim**

**made for violation of the Eighth Amendment)**. While the Court does not find that the facts of this case lend themselves to applying anything but a conscious-shocking standard for liability, it will consider Plaintiffs' theory in its analysis. *See, e.g.*, *Bublitz*, **327 F.3d at 491-92 (finding that even though the defendant Officer had several minutes to contemplate whether to deploy his "Stinger Spike System," which caused the fleeing vehicle to crash into the plaintiffs' oncoming vehicle, with fatal results, the Officer did not intentionally misuse the device or intend to cause the collision that would harm innocent bystanders – such was not conscience-shocking behavior)**

Here, Officer Eiskant's decision to park in a lot opposite of South 89th Street to wait for the Oldsmobile to emerge was a tactical judgment call. It was not, as Plaintiffs call it, an "invitation" for the driver of the Oldsmobile to engage in a high-speed car chase. In other words, the facts do not show that Officer Eiskant created a situation which could only result in a high-speed chase. It may not have been the best way to approach the situation, but the most it amounted to was negligence; the Fourteenth Amendment does not provide for tort liability whether a "deliberate indifference" or "conscience-shocking" standard is applied. Plaintiffs suggest that Officer Eiskant did not make an instantaneous decision to engage in a high-speed pursuit, but rather, he made a "deliberate and unhurried" decision to "r[u]n his suspect into a crowded intersection," ignoring the excessive risk that the chase could cause injury and death to others.

Officer Eiskant certainly could not have predicted that the Oldsmobile would refuse to comply with the traffic stop and instead attempt to flee. At the time, his only intent was to stop the Oldsmobile for a registration violation citation, which is a misdemeanor. The facts do not show that the prior circumstances indicated that the driver would attempt to flee from Officer Eiskant. Therefore, the Court does not find he had time to deliberate as to whether a pursuit would cause an excessive risk to public safety. In fact, as Plaintiffs' brief indicates, the chase itself lasted only approximately a minute. Thus, even had the Court applied the lesser standard of deliberate indifference, finding that there was enough time for deliberation regarding the excessive risk to others posed by the high-speed pursuit, there is no evidence Officer Eiskant drew the inference that such excessive risk of harm existed but deliberately ignored it. Rather, the facts show that instead of ignoring the risk, Officer Eiskant determined that the risk to public safety did not outweigh apprehending the fleeing driver.[6] Accordingly, Defendants are entitled to summary judgment on Counts I, II and III.

### 2. Count IV (City of Belleville, Illinois)

In order to show that the City of Belleville is liable for a **§ 1983** violation, Plaintiffs must prove either:

(1) the City had an express policy that, when enforced, causes a constitutional deprivation;

---

[6] During his deposition, Officer Eiskant also testified that the fact that the Oldsmobile fled from the scene led him to believe the driver could be more criminally dangerous than originally thought – as he may have just robbed a gas station or car jacked someone or he may have been on some other crime spree (Doc. 50, Eiskant Depo., 71:7-18).

(2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or

(3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

***McCormick v. The City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995))**.

The Supreme Court has further found that a municipality cannot be held liable under **§ 1983** merely "under the 'failure to train' theory." ***City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)**. Instead, the city's failure to train its law enforcement personnel must "[amount] to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* Therefore, Plaintiffs must show that Belleville "consciously" or "deliberately" made a choice not to provide proper training. *Id.*

Defendants argue, and this Court agrees, that since Defendants have been granted summary judgment on Counts I, II and III, summary judgment in favor of Belleville as to Count IV is also proper. It should be noted that the Seventh Circuit has held that "[n]either city nor police officers' supervisor can be held liable on failure to train theory or on municipal policy theory *absent* finding that individual police officers are liable on underlying substantive claim." ***Estate of Phillips, III v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997) (emphasis added)**. Having concluded above that Officer Eiskant did not violate Plaintiffs' Fourteenth Amendment rights, this Court must hold that Belleville has no relative municipal

liability.

### 3. Qualified Immunity

The debate about whether Officer Eiskant is entitled to qualified immunity for the claims against him in Counts I, II and III is moot. The Seventh Circuit, in a **§ 1983** case, has expressly ruled that where no constitutional violation has occurred, it is unnecessary to consider whether the defendants are entitled to qualified immunity." ***Id.*** **(citing *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 (7th Cir. 1995))**. Because this Court has concluded above that there was no constitutional violation, it is again unnecessary to revisit the issue of whether Officer Eiskant is entitled to qualified immunity.

## IV. CONCLUSION

For the reasons as set forth in this Order, Defendants' Motion for Summary Judgment (Doc. 50) is hereby **GRANTED** on all Counts of Plaintiffs' Complaint. This case is hereby **DISMISSED WITH PREJUDICE**. The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED**.

Signed this 29th day of April, 2008.

/s/      *David R Herndon*

**Chief Judge**
**United States District Court**